UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIE S. HENDERSON,

                        Plaintiff,

v.                                                                                              CASE # 18-cv-00072

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                                  OF COUNSEL:

LEWIS L. SCHWARTZ, PLLC                    LEWIS L. SCHWARTZ, ESQ.
  Counsel for Plaintiff
1231 Delaware Avenue, Suite 103
Buffalo, New York 14209

U.S. SOCIAL SECURITY ADMIN.                 DENNIS J. CANNING, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II    PAMELA MCKIMENS, ESQ.
  Counsel for Defendant                                 LAUREN MYERS, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order to proceed before the undersigned. (Dkt. No. 7.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion for judgment on the administrative record is DENIED and the Commissioner's motion is GRANTED.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on December 27, 1964. (Tr. 160.) He completed has a high school education (GED). (Tr. 255.) Generally, Plaintiff's alleged disability consists of mental illness, back problems, left side nerve damage, and left ear hearing impairment. (Tr. 254.) His alleged disability onset date is January 1, 2012. (Tr. 250.) He previously worked as a machine operator, maintenance worker, and stock person. (Tr. 255.)

   B.   **Procedural History**

On May 5, 2014, Plaintiff applied for a period of Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (Tr. 160, 230-235). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 14, 2016, Plaintiff appeared before the ALJ Timothy M. McGuan (Tr. 138, 219), who issued a written decision on March 22, 2017 denying Plaintiff's application. (Tr. 8-29). On December 12, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.)

   C.   **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law. (T. 13-24.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 5, 2014. (T. 18.) Second, the ALJ found Plaintiff had the severe impairments of bipolar disorder, with psychotic features, moderate; polysubstance abuse; alcohol dependence; mild obesity; lumbar spine herniations; mild right osteoarthritis of the right wrist and hand; and right shoulder impingement syndrome. (*Id.*) Third, the ALJ found Plaintiff's impairments, including the substance use disorder, medically equals one of the listed impairments located in 20 C.F.R.

Part 404, Subpart P, Appendix. 1. (T. 19.) Fourth, the ALJ found, if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities; therefore, Plaintiff would continue to have a severe impairment or combination of impairments. (T. 20.) Fifth, the ALJ determined, if Plaintiff stopped substance use, his limitations would not meet or medically equal the criteria of a Listing. (*Id*.) Sixth, the ALJ found, if Plaintiff stopped his substance use, he would have the RFC to perform a full range of work at the light level with limitations. The ALJ determined Plaintiff can occasionally interact with the public with no limits on interacting with coworkers and supervisors and he can occasionally understand, remember, and carry out complex and detailed task. (*Id*.) Seventh, the ALJ determined absent consideration of his substance dependence disorder, Plaintiff was unable to perform his past relevant. Eighth, the ALJ determined that there were a significant number of jobs in the national economy Plaintiff could perform.

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

On appeal, Plaintiff submits five assertions of error: (1) The ALJ erred by failing to consider the left shoulder injury as a severe impairment; and (2) The Commissioner erred in failing to properly evaluate the opinion from consulting internist Dr. Siddiqui; and (3) The ALJ erred by failing to perform a function-by-function analysis as required by SSR 96-8p before reaching an RFC finding; and (4) The Commissioner violated SSR 96-9p by failing to consider the use of a medically required cane; and (5) Failure to properly evaluate the materiality of drug and alcohol use. (DE 13 at 1.) Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. (Dkt. No. 13 at 22-23.) Plaintiff filed a reply brief in which he restates his original argument. (Dkt. No. 17.)

**B. Defendant's Arguments**

In response, Defendant makes five arguments. First, Defendant argues that the ALJ's Step Two finding was supported by substantial evidence. (Dkt. No. 17 at 17.) Second, that the ALJ properly weighed the medical opinion evidence. (Dkt. No. 17 at 18.) Third, the RFC finding was sufficient. (Dkt. No. 17 at 21.) Fourth, the ALJ properly considered Plaintiff's prescribed cane. (Dkt. No. 17 at 22.) Lastly, the ALJ properly determined that drug and alcohol abuse were material. (Dkt. No. 17 at 20.)

**III. RELEVANT LEGAL STANDARD**

**A. Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### C. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

When there is medical evidence of a plaintiff's drug or alcohol abuse, the "disability" inquiry does not end with the five-step analysis. *See* 20 C.F.R. § 416.935(a). The ALJ must determine whether the plaintiff would still be "disabled if [he] stopped using drugs or alcohol." *Id.* § 416.935(b)(1); *see also id.* § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [ the plaintiff's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."). Plaintiffs bear the burden of proving DAA immateriality. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

## IV. ANALYSIS

1. **The ALJ erred by failing to consider the left shoulder injury as a severe impairment**

"At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities." *Desmond v. Astrue*, No. 11-cv-0818, 2012 WL 6648625, at *3 (N.D.N.Y. Dec. 20, 2012) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). "The Act defines 'basic work activities' as 'abilities and aptitudes necessary to do most jobs,' and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Morgan v. Astrue*, 11-cv-1009, 2014 WL 318184, at *9 (W.D.N.Y. Jan. 29, 2014) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)).

"[T]he severity prong is intended as a de minimis standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.' " *456 Vicari v. Astrue*, 1:05-cv-4967, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting *Bowen*

6

*v. Yuckert*, 482 U.S. 137, 158, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (O'Connor, J., concurring, joined by Stevens, J.) ); *see also Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995) (holding that "the severity regulation is valid only if applied to screen out de minimis claims"). Of importance, courts in the Second Circuit have found that "[a] finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Juarbe v. Astrue*, 3:10-cv-1557, 2011 WL 4542964, at *6 (D.Conn. Aug. 30, 2011), report and recommendation adopted, 2011 WL 4542962 (D.Conn. Sept. 28, 2011) (quoting *Rosario v. Apfel*, No. 97-cv-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) ) (internal quotation marks omitted). "If [ ] the disability claim rises above the de minimis level, then the analysis must proceed to step three." *Mattei v. Barnhart*, 01-cv-1678, 2003 WL 23326027 at *6 (E.D.N.Y.2003).

As discussed above, the ALJ found the claimant's left upper extremity palsy since birth a non-severe impairment at Step Two. (Tr. 13.) He stated the claimant had previously worked with the impairment at the medium exertional level, left for reasons unrelated to his alleged impairments, and that there was no medical evidence that the condition had worsened over time (Tr. 14, 240, 246). Therefore, he concluded "that this condition would not limit the claimant's ability to perform the range of light work" that was found in the RFC.

Further, failure to find every impairment at issue severe at Step Two is not reversible error if the ALJ incorporates those impairments in the later steps of the sequential evaluation. *See Woodmancy v. Colvin*, 577 F. App'x 72, 74 n.1 (2d Cir. Sept. 2014) (summary order) (finding no error warranting remand because the ALJ did identify severe impairments at step two and the claim therefore proceeded through the sequential evaluation process). The ALJ discussed the exam findings of both upper extremities throughout the analysis and limited the claimant to light work.

7

(Tr. 19) It is well established that "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

2. **The Commissioner erred in failing to properly evaluate the opinion from consulting internist Dr. Siddiqui**

Plaintiff contends that the ALJ failed to adequately consider Dr. Siddiqui's opinion. The reasons for error include interpreting limitations as consistent with light work, failure to find the left upper extremity impairment severe, and lack of any reaching limitations in the RFC for both severe or non-severe impairments. (Dkt. No 13.) These arguments are partly addressed in the previous analysis of the prior argument.

The first part of the argument is that the RFC is not supported by substantial evidence given Dr. Siddiqui's opinion regarding the left upper extremity. Consultative examiner Dr. Siddiqui examined the claimant and found left shoulder elevation was restricted to 50 degrees, abduction left shoulder restricted to 50 degrees, adduction left side restricted to 10 degrees, internal rotation left side restricted to 10 degrees, and external rotation left side restricted to 30 degrees due to left shoulder weakness. (Tr. 424.) The left elbow also had reduced range of motion to 100 degrees, pronation restricted to 40 degrees, and supination restricted to 40 degrees due to left arm weakness.

8

(Tr. 424.) Hand grip strength was reduced to 2/5 on the left and it was noted he could make a knot, button clothes, and zip but it took a long time. Dr. Siddiqui diagnosed bilateral shoulder and arm pain and weakness and opined moderate to marked limitations in the ability to push, pull, or carry heavy objects. (Tr. 425.) The ALJ gave great weight to this opinion but stated the left upper extremity findings were inconsistent with treatment and other findings. He also stated the claimant had a history of malingering to further support his conclusion that the left upper extremity limitations were not valid. (Tr. 20.)

In determining the RFC, the ALJ must make a decision based on all of the relevant evidence, including a claimant's medical record, statements by physicians, and a claimant's description of her limitations. *See* 20 C.F.R. § 416.945(a). Although an ALJ will consider medical opinions on a claimant's function, ultimately the ALJ is tasked with reaching an RFC assessment based on the record as a whole. 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96–6p, 1996 WL 374180, at *1–2 (SSA July 2, 1996).

Significantly, the ALJ's RFC finding need not track any one medical opinion. *See Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole) (citing *Richardson,* 402 U.S. at 399) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). In the instant case, the ALJ gave the opinion great weight and limited the claimant to light work but did include pushing or pulling limitations and also found the left arm impairment non-severe. The ALJ stated that he found the claimant was "unable to sustain the lifting, standing, or walking requirements of medium or greater

exertional work" but capable of performing light work with no additional exertional limitations. (Tr. 17, 19.)

Plaintiff argues that the ALJ did not explain how he concluded light work could be preformed based on the limitation of "moderate to marked limitations" in the ability to push, pull, and carry heavy objects. Plaintiff cited *Otts v. Covlin*, which remanded a decision where the ALJ, without explanation, determined the plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently without pushing or pulling restrictions based on a consultative exam that found moderate to marked restrictions for lifting, carrying, pushing, and pulling. *Otts. v. Colvin*, 15-cv-6731-FPG, 2016 U.S. Dist. LEXIS 157211 (W.D.N.Y. Nov 11, 2016). In Otts, the court noted: "Because the ALJ failed to reconcile his RFC with the only physical medical opinion of record, this court is unable to conduct a meaningful review as to whether the RFC was supported by substantial evidence. Accordingly, remand is required." *Otts*, 2016 U.S. Dist. LEXIS 63251 at 12.

In this case however there was another medical opinion pertaining to the physical impairments, from a treating source. (Tr. 21.) Further, the ALJ did give an explanation for how he determined the claimant cold perform light work, despite the consultative examiner's findings. In discussing the consultative exam, the ALJ stated the additional evidence of lack of distress, normal 4/5 to 5/5 strength at a majority of his treatment visits, and normal gait "suggests that the claimant is still capable of performing light work." (Tr. 19.)

3. **The ALJ erred by failing to perform a function-by-function analysis as required by SSR 96-8p before reaching an RFC finding**

Plaintiff argues the RFC is not sufficient, particularly given an opinion by a single decision maker (SDM). (Dkt. No. 13 at 18.) Plaintiff contends it was an error that postural and manipulative

limitations, opined by SDM J. Hartner, were not included in the RFC. Plaintiff's reliance on the limitations from the SDM is incorrect. Numerous courts have concluded that assigning any evidentiary weight to a SDM's opinion is an error. *See Yorkus v. Astrue,* No. 10–2197, 2011 WL 7400189, at *5 (E.D.Pa. Feb. 28, 2011) (collecting cases); *Foxx v. Astrue,* No. 08–00403–KD–B, 2009 WL 2899048, at *7 (S.D.Ala. Sept. 3, 2009) ("[A] SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources.") (quoting *Bolton v. Astrue,* 07–CV–612, 2008 WL 2038513 (M.D.Fla., May 12, 2008)).

The ALJ properly reviewed the evidence as a whole, resolved any inconsistencies, and formulated a RFC finding that reflected Plaintiff's credible limitations. *See* 20 C.F.R. §§ 416.929, 416.945, and 416.946. The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ. *See Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009). The ALJ had substantial evidence to find there were no postural or manipulative limitations. The medical evidence shows normal gait, Plaintiff could squat and walk on his heels and toes, his cervical and lumbar spine ranges of motion were full, and straight leg raising was negative. (Tr. 423-24, 451, 453, 683-84, 686, 771, 767, 826-27, 831.) He did not use an assistive device to ambulate, his lower extremity strength was normal, and his sensation as intact. (Tr. 683-84, 686, 767.) Plaintiff only cited the SDM opinion and fact the claimant was prescribed a cane, even acknowledging the later only "implicitly infers he was having problems with balance." (Dkt. No. 13 at 19.)

4. **The Commissioner violated SSR 96-9p by failing to consider the use of a medically required cane**

The ALJ is not under an obligation "to mention or discuss every single piece of evidence in the record." *Barringer v. Comm'r of Soc. Sec.,* 358 F.Supp.2d 67, 78–79 (N.D.N.Y.2005) (citing

11

*Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)); *see also Berry v. Schweiker,* 675 F.2d 464, 468 (2d Cir.1982) (ALJ's failure to explain his rejection of a claimed listed impairment is not error where the court is "able to look to other portions of the ALJ's decision and to [credible evidence in the record] in finding that his determination was supported by substantial evidence"); *Francois v. Astrue,* No. 09 Civ. 6625(HB), 2010 WL 2506720, at *7 (S.D.N.Y. June 21, 2010) (rejecting claim that the ALJ failed to consider use of a cane for ambulation, use of pain medication, and subjective allegations of pain and holding that "contrary to Plaintiff's understanding, the relevant question is not whether [the] ALJ ... considered any particular piece of evidence, but whether her determination was supported by substantial evidence in the record"). *Podolsky v. Colvin*, No. 12 CIV. 6544 RA JLC, 2013 WL 5372536, at *15 (S.D.N.Y. Sept. 26, 2013).

Although Plaintiff was prescribed a cane, there is no evidence it was used or medically necessary. (Tr. 510.) Under SSR 96–9p, in order to find that a "hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96–9p at 7; *see also Miller v. Astrue,* 538 F.Supp.2d 641, 651 n. 4 (S.D.N.Y. 2008) (where there was no evidence that plaintiff required a cane at all times and where treating physicians did not opine that she was required to use cane, plaintiff's use of cane did not factor into finding her able to perform sedentary work). The ALJ stated in his decision that a cane was prescribed but that it was inconsistent with the claimant's normal gait without use of an assistive device. (Tr. 19.) Although the decision only cites three examples in the record, there are many more examples in the record. "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale

of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)). Upon examinations, after the prescription of the cane, Plaintiff had a normal gait and station, could heel and toe walk, perform full squat, and did not use any assistive device. (Tr. 423-24, 451, 453, 683-84, 686, 771, 767, 826-27, 831)

In his brief, Plaintiff cites a great deal of case law but nothing from the medical record that shows the cane was used. He only stated that on one occasion, Plaintiff "had mild difficulty standing from a seated position". (Tr. 683, 686.) The Court is not required to comb the record in search of evidence in support of Plaintiff's position. *See, e.g., Dietrich v. E.I. Du Pont de Nemours & Co.,* No. 02–CV–678S, 2004 WL 2202656, *9, n8 (W.D.N.Y. Sept. 28, 2004) (("[n]ot only has Plaintiff failed to provide any of his own medical evidence in support of his *prima facie* case, but he has also failed to include citations to the medical records Defendant included as exhibits in its moving papers. It is not this Court's duty, obligation or function to search the record for evidence supporting Plaintiff's case, and this Court declines to do so."). Further, Plaintiff's reliance on SSR 96-9p is not supported by that one medical record as the ruling states "if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." (SSR 96–9p, 1996 WL 374185, at *7 (S.S.A July 2, 1996)).

It is clear from the ALJ's decision that he considered the medical evidence in the record regarding Plaintiff's use of a cane, including clinical and laboratory findings from his treating physicians. The ALJ cited the prescription but also reports of normal gait, normal reflexes, normal extremity range of motion, normal balance and coordination. (Tr. 18-19.) The ALJ's decision reflects a consideration into the ability ambulate, based on the medical records and substantial

evidence that the cane prescription did not impose additional limitations in the RFC. *See, e.g., Podolsky v. Colvin*, No. 12 CIV. 6544 RA JLC, 2013 WL 5372536, at *16 (S.D.N.Y. Sept. 26, 2013) (Although the ALJ does not provide an in-depth analysis of Podolsky's cane use, his decision does reflect a consideration of Podolsky's ability to ambulate); *Staples v. Astrue,* 329 Fed. App'x 189, 191–92 (10th Cir.2009) (ALJ's error in relying on lack of prescription for cane in determination of claimant's residual functional capacity was not error that required remand because no indication that cane was medically necessary to perform light or sedentary work).

5. **Failure to properly evaluate the materiality of drug and alcohol use**

When there is medical evidence of an applicant's drug or alcohol abuse, an individual shall not be considered disabled if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled. If the Commissioner determines that the claimant's remaining limitations after stopping the use of drugs and alcohol would not be disabling, the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012); 20 C.F.R. § 416.935(a)-(b); *see* Pub.L. 104-121, 110 Stat 847 (codified at 42 U.S.C. § 1382c(a)(3)(J). The claimant bears the burden of proving that his drug and alcohol abuse is not material to the determination that he is disabled. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123-24 (2d Cir. 2012).

Here, the ALJ's materiality determination was proper and supported by substantial evidence in the record. An ALJ may rely on periods of sobriety to support his finding of materiality. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). Unlike *Cage*, the record in this case contains evidence of extensive periods of sobriety and mental status examinations while Plaintiff was allegedly sober. The record documents drug and/or alcohol abuse

14

in January 2014, July 2014, September 2014, November 2014, October 2015, and December 2015. (Tr. 343, 433, 450, 561, 564, 566, 576, 644-45, 651.) While abusing substances, the record shows he was semi-cooperative, endorsed hallucinations, was irritable and manipulative, had an angry mood and restricted affect, and endorsed suicidal ideation. (Tr. 342, 344, 559, 564, 566, 574, 576, 579.) After being abstinent, the record shows that Plaintiff denied anxiety, depression, perceptual disturbances, paranoia, and delusions; he was cooperative, well groomed and oriented with normal speech, attention, concentration, and memory. (Tr. 452, 758, 761, 767, 771, 826, 828, 830, 832.) He had no paranoia or delusions, no perceptual disturbances, and no suicidal homicidal ideations; and his abstract reasoning was within normal limits, his memory was …intact, and his attention and concentration were within normal limits. (Tr. 826.) November and December 2016 examination notes were essentially the same. (Tr. 830-32.) The record contained sufficient objective evidence of Plaintiff's mental functional ability while sober; therefore, there was sufficient evidence in the record to support the ALJ's determination that Plaintiff's DAA was material.

Part of Plaintiff's argument is that the ALJ did not weigh the opinions correctly when making the materiality finding. Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's

determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c). In this case, the ALJ summarized Plaintiff's long history of inpatient and outpatient mental health treatment, including hospital admissions and substance abuse treatment facilities. (Tr. 19-20.) At the July 2014 consultative examination with Dr. Duffy, the claimant had only mild to moderate difficulties. The claimant however reported he was not using any drugs or alcohol and had abstained from any substances since May 27, 2014. (Tr. 416.) This is contrary to Plaintiff's assertion that the opinion was rendered while he "was having significant problems with drugs and alcohol". (Dkt. No. 13 at 23.) This therefore also undermines the argument that the opinion of Dr. Grace's was the only medical opinion from a period of sobriety and should have been given greater weight. Dr. Grace had opined Plaintiff was "very limited in his ability to maintain attention and concentration" due to hallucinations in July 2015, but the ALJ accorded little weight and properly stated it was not supported by the overall record. The ALJ referenced records that stated that when the claimant was compliant with treatment and medications, he did not suffer from hallucinations. (Tr. 21.) Plaintiff reported the voices were gone when he took his medication but that his attention was poor with a depressed mood when he ran out of medication. (Tr. 433, 436.) A month before Dr. Grace's opinion, Plaintiff reported delusions but exam showed fair concentration, normal perceptions, and logical thought processes. (Tr. 736.) Then in December 2015, progress notes reflected Plaintiff's medications were restarted and he was doing well, with no voices or psychotic symptoms. (Tr. 448-49.) He told treating sources in March 2016 he was exercising daily and denied anxiety and

16

depression in July 2016. (Tr. 769, 758.) In August 2016, Plaintiff told his nurse practitioner that he was doing well and enjoying life. (Tr. 826.) He denied psychotic symptoms and was attending multiple NA groups. (Tr. 826.) When deciding on the weight to give to the opinions, the ALJ also properly cited the claimant's daily activities, including going out to socialize with friends, attending church multiple times a week, cooking daily, cleaning weekly, and taking care of his personal needs. (Tr. 21, 423, 450, 452.) In sum, the ALJ's properly afforded the opinions weight in formulating the RFC and materiality finding. Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence of record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin*, 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

**ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings is **<u>DENIED</u>**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings is **<u>GRANTED</u>**; and it is further

    **ORDERED** that Plaintiff's unfavorable determination is **<u>AFFIRMED</u>**; and it is further

    **ORDERED** that Plaintiff's Complaint is **<u>DISMISSED</u>**.

Dated: July 18, 2019
      Rochester, New York        <u>*J. Gregory Wehrman*</u>

                                                HON. J. Gregory Wehrman

                                                United States Magistrate Judge